**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| FORT BELKNAP INDIAN COMMUNITY OF THE FORT BELKNAP INDIAN RESERVATION OF MONTANA, a federally recognized Indian Tribe,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | CV-25-111-BMM<br><br>ORDER ON MOTION TO INTERVENE BY THE BLACKFEET TRIBE |

**INTRODUCTION**

The Fort Belknap Indian Community of the Fort Belknap Reservation of Montana ("FBIC"), a federally recognized Indian Tribe, sued the United States Department of Interior ("DOI"). (Doc. 1.) FBIC alleges that DOI failed to comply with the Congressional mandate to establish terms and conditions ("Terms and Conditions") by which the U.S. share of the natural flow of the Milk River Basin is allocated between FBIC and the Blackfeet Tribe (collectively "Tribes"). (*Id.* ¶ 1.)

1

FBIC alleges that this action "arises out of the United States' violation of: (1) its treaty and trust responsibilities guaranteeing the FBIC's federally reserved, Indian water rights in the Milk River Basin." (*Id*. ¶ 2.)

Blackfeet Tribe moved to intervene in the action as of right under Fed. R. Civ. P. 24(a)(2), or alternatively for permissive intervention of Fed. R. Civ. P. 24(b), "for the limited purpose of moving to dismiss this action under FRCP 12(b)(7) and FRCP 19. (Doc. 22.) FBIC opposes the Blackfeet Tribe's motion to intervene. (Doc. 27.) The Government addressed the motion at the hearing and stated that it takes no position on the Blackfeet Tribe's motion for intervention. (Doc. 36.) The Court held a hearing on the matter on June 22, 2026. (Doc. 36.)

## HISTORY

The Fort Belknap Reservation is the homeland of the Gros Ventre (Aaniiih) and Assiniboine (Nakoda) Tribes. (Doc. 1 ¶ 8.) The Gros Ventre Tribe and the Assiniboine Tribe are governed by the Fort Belknap Indian Community Council. (*Id*. ¶ 7.) FBIC is a federally recognized sovereign Indian tribe located within the District of Montana. (*Id*. ¶¶ 6, 8.) The Blackfeet Tribe of the Blackfeet Indian Reservation also is a federally recognized tribe located within the modern-day boundaries of the State of Montana. FBIC and Blackfeet Tribe entered several treaties with the United States that are relevant to this litigation, including the Treaty of Fort Laramie, Sept.

17, 1851, 11 Stat. 749 ("1851 Treaty") and the Treaty with the Blackfoot, Oct. 17, 1855, 11 Stat. 657 ("1855 Treaty"). (*Id*. ¶ 3.)

Indian tribes hold federally reserved water rights sufficient to sustain a livable, permanent homeland pursuant to *Winters v. United States*, 207 U.S. 564, 576-77 (1908). (Doc.1 ¶ 18.) FBIC and Blackfeet Tribe each hold federal, reserved Indian water rights in the Milk River Basin in Montana. (*Id*. ¶ 1.) The Milk River originates on the Blackfeet Reservation near Babb, Montana, and flows northeast into Alberta, Canada, at the "Western Crossing." (*Id*. ¶ 73.) The Milk River flows back into the United States at the "Eastern Crossing" north of Goldstone, Montana. (*Id*.) Several other tributaries originating in Montana and Alberta flow into the Milk River before it reaches the Fort Belknap Indian Reservation near Harlem, Montana. (*Id*.) Natural flows in the Milk River may be insufficient to satisfy all the Tribes' respective rights if the Tribes both fully develop their tribal water rights. (Doc. 20 at 11.)

Indian reserved water rights are often agreed upon in settlements and water compacts. The United States and the Blackfeet Tribe entered such a water compact in 2009 after decades of litigation and negotiation. (Doc. 23 at 3.) The Montana Legislature ratified the Blackfeet Water Compact in 2009. Mont. Code Ann. § 85-20-1502 et seq. The Blackfeet membership approved the Blackfeet Water Compact by a vote on April 20, 2017 (certified by the Bureau of Indian Affairs on May 30, 2017).

(Doc. 23 at 3 n.3.) The United States Congress authorized, ratified, and confirmed the Blackfeet Water Compact on December 16, 2016, in the Blackfeet Water Rights Settlement Act, Pub. L. No. 114-322, 130 Stat. 1627, (title III, subtitle G of the Water Infrastructure Improvements for the Tribe Act of 2016 ("Blackfeet Settlement Act")). (*Id*.) The Blackfeet Settlement Act establishes Blackfeet Tribe's water rights on its entire reservation and stated that Blackfeet Tribe shall have jurisdiction over its tribal water right. (*Id*. at 3-4.)

FBIC additionally entered a water rights compact with the State of Montana in 2001, MCA § 85-20-1001, although the FBIC compact has not yet been ratified by the United States Congress. (Doc. 1 Ex. 1 at 4.) FBIC and Blackfeet Tribe have equal priority dates—October 17, 1855—to water rights on the Milk River. (*Id*. ¶¶ 1, 22.) Section 3705(c) of the Blackfeet Settlement Act requires Blackfeet Tribe and FBIC to enter into an agreement as to their respective Milk River water rights in order to address the Tribes' competing and conflicting water rights to the Milk River. (*Id*. ¶ 44.) Section 3705 provided that, if the Tribes were unable to reach agreement within three years, the following would occur:

> . . . the Secretary, in the Secretary's sole discretion, shall establish, after consultation with the [Blackfeet Tribe] and the [FBIC], terms and conditions that reflect the considerations described in [Section 3705(c)(2)] by which the respective water rights of the [Blackfeet Tribe] and the [FBIC] in the Milk River may be exercised.

4

§ 3705(e)(1), 130 Stat. at 1818. The considerations described in § 3705(c)(2) include the following:

> [The agreement contemplated by Section 3705(c)(1) of the Act] "shall take into consideration—(A) the equal priority dates of the 2 Indian tribes; (B) the water supplies of the Milk River; and (C) historical, current, and future uses identified by each Indian tribe."

§ 3705(c)(2), 130 Stat. at 1818. The Tribes failed to reach an agreement pursuant to § 3705 within three years of the Settlement Act or during the agreed upon extension periods. (Doc. 1 ¶ 50, Ex. 1 at 4.) The Secretary engaged in consultation with the Tribes beginning in 2023, after the final extension period ended. (*Id*. Ex. 1 at 4.)

The Secretary hosted the first in-person consultation on November 3, 2023, to receive input from the Tribes to be taken into consideration in the Terms and Conditions development under § 3705. (Doc. 1 ¶ 51.) The Secretary shared draft Terms and Conditions with the Tribes on April 19, 2024. (*Id*. ¶ 56.) The Secretary invited feedback on the original draft proposal and hosted a second consultation meeting on May 30, 2024. (Doc. 20 at 13.) Further consultation proceeded. (Doc. 1 ¶ 59-61.) The Secretary shared a final version of the Terms and Conditions on December 19, 2024. (*Id*. ¶ 62.)

The Secretary must publish in the Federal Register a "statement of findings"

pursuant to the Settlement Act by January 21, 2025, otherwise the Terms and Conditions, among other rules, will be voided. Pub. L. No. 114-322 § 3720(f). The Act states that a later alternative date may be agreed to "by the [Blackfeet] Tribe and the Secretary." § 3723. Blackfeet Tribe and the Secretary have agreed to extend the January 1, 2025, deadline to July 21, 2027. (Doc. 20 at 14, citing Ex. C, Letter from Doug Burgum, Secretary of the Interior, to Rodney "Minnow" Gervais, Chairman, Blackfeet (Jan. 14, 2026) (concurrence signature Jan. 15, 2026) ("July 2027 Extension Agreement").)

## LEGAL STANDARD

Federal Rule of Civil Procedure 24 establishes two paths to intervention. A party has the right to intervene when it "claims an interest relating to the property or transaction that is the subject of the action" and "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Courts generally construe FRCP 24(a) liberally in favor of intervention. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). FRCP 24(a) requires a movant to make the following showing: "(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating

to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Id.* A court deciding a motion to intervene as of right should be "guided primarily by practical considerations, not technical distinctions." *See U.S. v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) (stating that "equitable considerations" guide determination of motions to intervene as of right) (citation omitted). Nonetheless, the "[f]ailure to satisfy any one of the requirements is fatal to the application." *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

FRCP 24(b) allows a court to grant permissive intervention where the applicant shows "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997). A finding of untimeliness defeats a motion for permissive intervention. *Id.* "A motion for permissive intervention pursuant to [FRCP 24(b)] is directed to the sound discretion of the district court." *San Jose Mercury News, Inc. v. US. Dist. Court – N. Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999).

## DISCUSSION

7

Blackfeet Tribe argues that FBIC's complaint "places the water rights of the Blackfeet Tribe directly at risk." (Doc. 23 at 2.) Blackfeet Tribe contends that "FBIC seeks to invalidate the Secretary of the Interior's Terms and Conditions issued pursuant to section 3705(e) of the Blackfeet Water Rights Settlement Act[], by which the Milk River water rights of the Blackfeet Tribe and FBIC may be exercised given their equal priority dates." (*Id*., citing Blackfeet Water Rights Settlement Act, Pub. L. No. 114-322, 130 Stat. 1627, (title III, subtitle G of the Water Infrastructure Improvements for the Nation Act of 2016 (as amended)) (hereinafter "Settlement Act").) Blackfeet Tribe asserts that FBIC's requested relief would invalidate the Settlement Act and its approval of the Blackfeet Water Rights compact which would thereby deprive Blackfeet Tribe of its water rights and benefits under the Settlement Act. (*Id*.) Blackfeet Tribe argues that FBIC seeks to "redefine Blackfeet's Milk River water right and treat FBIC more favorably by ensuring that FBIC receives it[s] full water, all to the detriment of the Blackfeet Tribe." (*Id*.) Blackfeet Tribe asserts that it is a necessary party to this action and is entitled to intervention as of right based on its substantial rights at stake. (*Id*. at 3.) Blackfeet Tribe seeks permissive intervention in the alternative. (*Id*.)

FBIC argues that it "does not challenge the Blackfeet Tribe's Milk River Water Rights as ratified in its Water Compact," or "seek[] to require the Secretary to

redefine Blackfeet's Milk River water right and to treat FBIC more favorably . . .." (Doc. 27 at 3, citing Doc. 23 at 3.) FBIC argues that the "key issue . . . is much more narrow." (*Id.* at 3.) FBIC contends that its challenge "focuses on the Secretary's failure to comply with the Blackfeet Water Rights Settlement Act . . . when addressing the circumstances where the 'natural flows in the Milk River may be insufficient to satisfy both Tribes rights' if fully developed on their respective Reservations." (*Id.*) (cleaned up). The Court will address each issue in turn.

## I.    Rule 24(a) Intervention as of Right.

### A. Blackfeet Tribe's Motion to Intervene Proves Timely.

FBIC concedes that Blackfeet Tribe's motion to intervene proves timely. (Doc. 27 at 8.) The Court considers the totality of the circumstances when evaluating timeliness but focuses on three factors: 1) the stage of the proceeding at which a movant seeks to intervene; 2) the prejudice to the other parties; and 3) the reason for and length of the delay. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (citing *Cnty. of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986)). The crucial factor for assessing the timeliness of a motion to intervene, however, remains the identification of "when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). The Blackfeet Tribe

filed its motion to intervene before the time had expired for the United States to file its responsive pleading. (Doc. 23 at 9.) The stage of the proceedings remains early and no prejudice exists to other parties related to the timeliness of Blackfeet Tribe's motion to intervene. The Court agrees that Blackfeet Tribe timely filed its motion to intervene when it determined that its interests would not be adequately protected by the existing parties.

### B. Blackfeet Tribe Possesses a Legally Protectable Interest at Stake in this Litigation.

Blackfeet Tribe asserts that it possesses a legally protectable interest at stake in this litigation. (Doc. 23 at 9-11.) Blackfeet Tribe argues that its "legally protected water rights to the Milk River [] would be impaired by this action" which demonstrates a "clear, protectable, and sufficient" legal interest. (*Id.* at 10.) The Court agrees.

FBIC argues that Blackfeet Tribe's asserted interest would be in any secondary action by the Secretary of the Interior should the Court grant its requested relief and not in the actions at issue in this proceeding. (Doc. 27 at 9.) FBIC asserts that its requested relief, based on the Administrative Procedure Act ("APA") and *Winters v. United States*, 207 U.S. 564 (1908), would determine that the United States has "both the power and the duty to take the action that the FBIC is demanding, but it would

then be that federal action, in compliance with the Secretary's duty under federal law, which would allegedly impact the Blackfeet Tribe's interests." (*Id.*) The Court remains unpersuaded by FBIC's circular reasoning.

"We have held that '[w]hether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established.'" *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (quoting *Greene v. United States,* 996 F.2d 973, 976 (9th Cir.1993)) (internal citation omitted). "It is generally enough that the interest [asserted] is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 (quoting *Sierra Club v. United States EPA,* 995 F.2d 1478, 1484 (9th Cir. 1993)). "[A] district court is required to accept as true the non-conclusory allegations made in support of an intervention motion." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 819.

FBIC impliedly concedes that a relationship exists between Blackfeet Tribe's legally protected interest and FBIC's claims. FBIC knows that Blackfeet Tribe holds legally protectable water rights on the Milk River. The Ninth Circuit has recognized that this element of the Rule 24(a)(2) test is met when parties demonstrate that the requested relief would result in changes to established rights. *See Sw. Ctr. for*

11

*Biological Diversity*, 268 F.3d at 819 (citing *Sierra Club,* 995 F.2d at 1484). The plaintiff in *Sierra Club* had brought a Clean Water Act action against the City of Phoenix requesting that "the EPA promulgate water quality standards for final pollutant discharge permits 'that reduce toxics being discharged from each of the Arizona point sources.'" *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 818-19 (quoting *Sierra Club,* 995 F.2d at 1480). The Ninth Circuit determined that the City of Phoenix could intervene as of right because as an EPA permittee, the City "could be affected when the relief sought would require the EPA to make the City's permits more restrictive." *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 819 (quoting *Sierra Club,* 995 F.2d at 1482, 1486).

FBIC's requested relief clearly would affect Blackfeet Tribe's legally protected water rights as it would remove the established rule and require a new analysis and decision that likely may result in diminished water for Blackfeet Tribe to the benefit of FBIC. The Court finds unpersuasive FBIC's arguments that only the apportionment of water rights would be affected, rather than actual water rights. The apportionment of water rights directly impacts Blackfeet Tribe's interests in its water rights.

FBIC additionally argues that Blackfeet Tribe's water rights have not vested under the Terms and Conditions because the decision has not become final and

nonappealable. (Doc. 27 at 10.) The Court finds uncompelling FBIC's argument. The finality of the decision within the Federal Register fails to govern the validity of Blackfeet Tribe's water rights or the decisions at issue here. The Court concludes that Blackfeet Tribe holds a legally protectable interest sufficient to satisfy the second element of Rule 24(a)(2)'s requirements.

### C. Blackfeet Tribe's Interests Would Be Impeded by This Action.

The Court must determine whether Blackfeet Tribe's interests would as a practical matter be impaired or impeded by the disposition of this action as it concluded that Blackfeet Tribe has demonstrated a significantly protectable interest. "Rule 24 advisory committee notes [] state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 advisory committee's notes). FBIC's requested relief would both legally and practically affect Blackfeet Tribe's interests here. "Put simply, if [FBIC is] successful in their suit, [Blackfeet Tribe's] water rights could be impaired, so [Blackfeet Tribe]" is entitled to intervention as of right." *Klamath Irrigation Dist. v. United States Bureau of Reclamation*, 48 F.4th 934, 944 (9th Cir. 2022) (holding that the Klamath Tribes are required parties under Rule

19(a)).

### D. The United States Cannot Represent Blackfeet Tribe's Interests in This Action.

Blackfeet Tribe argues that "the Secretary must balance the rights and interests of two distinct sovereign Tribes, each of which has property rights and sovereignty interests which must be taken into consideration, and each of which is owed the same federal treaty and trust obligations." (Doc. 23 at 11-12.) Blackfeet Tribe asserts that its interests conflict with FBIC's and the Secretary cannot adequately represent Blackfeet Tribe's interests because it must balance both those interests. (*Id*.) Blackfeet Tribe cites *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456 (9th Cir. 1994), to support its contention that "[i]n disputes involving intertribal conflicts, the United States cannot properly represent any of the tribes without compromising its trust obligations owed to all tribes." (Doc. 23 at 12, quoting *Quileute Indian Tribe*, 18 F.3d at 1460.)

FBIC argues that Blackfeet Tribe holds the same interest as the Secretary "in establishing terms and conditions for exercising Indian reserved water rights in the Milk River in a way that complies with federal law." (Doc. 27 at 12.) FBIC asserts that "[i]t is the failure of the United States to comply with federal law that the FBIC is challenging, not the Blackfeet Tribe or its interests." (*Id*.) FBIC further contends

14

that Blackfeet Tribe's interests will not be prejudiced if the United States is required to follow the law. (*Id*. at 12-13.) FBIC additionally argues that it proves improper to rely on standards in Rule 19 cases in this Rule 24(a) analysis. (*Id*. at 13-14.)

"In assessing an absent party's necessity under Fed.R.Civ.P. 19(a), the question whether that party is adequately represented parallels the question whether a party's interests are so inadequately represented by existing parties as to permit intervention of right under Fed.R.Civ.P. 24(a)." *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992). The Court concludes it does not prove improper to reference parallel Rule 19 cases in a Rule 24(a) analysis. "The Ninth Circuit has adopted a four-part test to determine whether an applicant meets the requirements of Rule 24(a)," which mirrors the Rule 19 factors. *Nat. Res. Def. Council v. Norton*, No. 05-16581, 2006 WL 1050147, at *1 (9th Cir. Apr. 19, 2006) (citing *Ctr. For Biological Diversity v. Berg,* 268 F.3d 810, 817 (9th Cir. 2001); *see Shermoen*, 982 F.2d at 1318 (listing three factors in Rule 19 test).

Courts consider three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *W. Watersheds Project v. Haaland*, 22 F.4th 828,

15

840–41 (9th Cir. 2022) (quoting *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011)).

The United States will not "undoubtedly make all of a proposed intervenor's arguments" as evidenced by Blackfeet Tribe's proposed motion to dismiss and reliance on tribal sovereign immunity compared to the United States's pending motion to dismiss. (*See* Doc. 22, Ex. 1; Doc. 19.) The United States is not capable of making such an argument in this case. The United States also cannot represent Blackfeet Tribe to the fullest extent as that would conflict with its competing duty to represent FBIC. *Quileute Indian Tribe*, 18 F.3d at 1460. The Ninth Circuit in *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 853-856 (9th Cir. 2019), rejected the United States's general proposition that it always can adequately protect the interest of tribes in litigation. The Ninth Circuit in *Dine Citizens* addressed the relevant case law in depth and concluded, at least for the facts of that case, that "while the federal defendants ha[d] an interest in defending their own analysis that formed the basis of the [decisions] at issue, here they d[id] not share an interest in the *outcome* of the [decisions]." *Id*. at 855.

Blackfeet Tribe additionally may bring elements to the case that the United States may neglect. Blackfeet Tribe has interests, including sovereign and economic interests, in exercising its water rights to the Milk River that the United States does

16

not share. *See Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 13 (D.D.C. 2019) (discussing difference between the federal Government's interest and the tribes' interest by focusing on economic interests).

The Court recognizes that "[w]hen an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), *as amended* (May 13, 2003) (citing *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997)). The Court determines that though both Blackfeet Tribe and the United States seek dismissal, the ultimate objectives of Blackfeet Tribe and the United States inherently must differ based on the United States's competing obligations to the Tribes. The Court finds compelling Blackfeet Tribe's argument that the United States's interest is in defending its Terms and Conditions under the requirements of the Blackfeet Settlement Act which differs from Blackfeet Tribe's interests which are to ensure its water rights are not diminished. (Doc. 34 at 10.)

The Court also finds instructive the Ninth Circuit's decision in *Klamath Irrigation Dist.*, 48 F.4th at 944-45, which discussed *Dine Citizens*, 932 F.3d at 853-856. The Ninth Circuit analogized the facts in *Klamath* to *Dine Citizens* and reasoned as followed:

"[u]nder *Dine Citizens*, Reclamation's and the Tribes' interests, though

17

overlapping, are not so aligned as to make Reclamation an adequate representative of the Tribes. The Tribes' primary interest is in ensuring the continued fulfillment of their reserved water and fishing rights, while Reclamation's primary interest is in defending its Amended Proposed Action taken pursuant to the ESA and APA. While Reclamation and the Tribes share an interest in the ultimate outcome of this case, our precedent underscores that such alignment on the ultimate outcome is insufficient for us to hold that the government is an adequate representative of the tribes."

*Klamath Irrigation Dist.*, 48 F.4th at 944-45. The Court agrees with the Ninth Circuit that "a unity of some interests does not equal a unity of all interest." *Id*. at 945. "[The United States] and [Blackfeet Tribe] share an interest in the ultimate outcome of this case for very different reasons. Further, [Ninth Circuit] case law has firmly rejected the notion that a trustee-trustor relationship alone is sufficient to create adequate representation." *Id*.

"The burden on proposed intervenors in showing inadequate representation is minimal, and would be satisfied if they could demonstrate that representation of their interests 'may be' inadequate." *Arakaki*, 324 F.3d at 1086 (citing *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972)). The Court concludes that Blackfeet Tribe sufficiently has demonstrated that the United States cannot adequately represent its interests in these proceedings due to the inherently conflicting obligations the United States owes to FBIC and Blackfeet Tribe, and the clear stake in this litigation held by Blackfeet Tribe.

18

## II. Rule 24(b)(ii) Permissive Intervention.

The Court additionally determines that Blackfeet Tribe meets the requirements for permissive intervention pursuant to Rule 19(a). Under Fed. R. Civ. P. 24(b)(1)(B), the Court "may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996). Blackfeet Tribe argues that it shares "a question of law or a question of fact in common" with the pleadings. (Doc. 23 at 13.) Blackfeet Tribe asserts that its defense and FBIC's complaint "could not be any closer" and that its interest in this litigation "arises from the same set of facts as Plaintiff's claims." (*Id*., quoting *Nooksack Indian Tribe v. Zinke*, 321 F.R.D. 377, 383 (W.D. Wash. 2017).) FBIC disagrees. (Doc. 27 at 14-15.)

The existence of a common question of fact must be liberally construed. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108-09 (9th Cir. 2002) *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *see also Nooksack Indian Tribe*, 321 F.R.D. at 383. FBIC fails to argue that Blackfeet Tribe's proposed defense shares no questions of fact or law with its complaint. (Doc. 27 at 14-15.) FBIC reiterates its argument pertaining to adequacy

19

of representation. (*Id*. at 15.) FBIC additionally continues to argue that Blackfeet Tribe's interests will not be impaired through its requested relief. (*Id*. at 14-15.) The Court finds unpersuasive FBIC's position. The Court declines to address the permissive intervention requirements but concludes that Blackfeet Tribe demonstrates common questions of law or fact related to the Tribes' water rights, the Blackfeet Water Compact and Settlement Act, and the related legal history. The Court determines, in its discretion, that intervention proves proper.

## CONCLUSION

The Court determines that Blackfeet Tribe has demonstrated the necessary elements to prove entitlement to intervention as of right under Rule 24(a)(2), and in the alternative, permissive intervention under Rule 24(b). The Court grants Blackfeet Tribe's Motion to Intervene. (Doc. 22.)

**IT IS ORDERED** that the motion (Doc. 22) for intervention as of right by the Blackfeet Tribe is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall file the Defendant-Intervenor Blackfeet Tribe's Proposed Motion to Dismiss (Doc. 22 Ex. 1) as a separate docket entry.

DATED this 25th day of June, 2026.

 

Brian Morris, Chief District Judge
United States District Courts